UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| JOSEPHINE F. TAILOR and WILLIAM J. BOWKER, *on behalf of themselves and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, et al.,<br><br>Defendants. | Civil Action No. 2:18-CV-11320-SDW-SCM<br><br>**ON DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION**<br><br>[D.E. 14] |

## REPORT & RECOMMENDATION

**STEVEN C. MANNION**, United States Magistrate Judge.

This matter comes before the Court upon Defendants Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc.'s ("Midland Credit") (collectively the "Midland Defendants") motion to compel individual arbitration.[1] Plaintiffs Josephine F. Tailor ("Ms. Tailor") and William J. Bowker ("Mr. Bowker") (collectively the "Tailor-Bowker Plaintiffs") filed a brief in opposition[2] and the Midland Defendants filed a reply.[3] The Honorable Susan D. Wigenton, U.S.D.J. referred this motion to the undersigned for a report and recommendation.[4]

---

[1] (ECF Docket Entry No. ("D.E.") 14, Defs.' Mot. to Compel Arbitration). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

[2] (D.E. 17, Pls.' Opp'n).

[3] (D.E. 20, Defs.' Reply).

[4] L. Civ. R. 72.1(a)(2).

After considering the parties' written submissions, the Court decides this matter without oral argument.[5]  For the reasons set forth below, the undersigned respectfully recommends that the Midland Defendants' motion to compel arbitration be **DENIED** without prejudice.

## I.   BACKGROUND & PROCEDURAL HISTORY[6]

This case involves alleged violations of the Fair Debt Collection Practices Act ("FDCPA") resulting from the Midland Defendants' attempts to collect consumer debts from the Tailor-Bowker Plaintiffs.[7] The Tailor-Bowker Plaintiffs assert the Midland Defendants falsely threatened that "[i]f the account goes to an attorney, our flexible options may no longer be available to you."[8] Upon receipt of the Amended Complaint, the Midland Defendants filed the instant motion to compel arbitration, alleging that the Tailor-Bowker Plaintiffs each consented to arbitration as part of the contracts governing their accounts.[9]

The Midland Defendants contend that Ms. Tailor incurred financial obligations, via eight credit cards,[10] governed by agreements each containing the following arbitration provision:

---

[5]  *See* Fed. R. Civ. P. 78.

[6] The Court relies upon the allegations set forth within the pleadings and motion record for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[7] (D.E. 9, Am. Compl., at ¶ 1).

[8] (*Id.*).

[9] (D.E. 14-58, Defs.' Mot. to Compel Arbitration Br.).

[10] (*Id.*, at 5–7, D.E. 14-24, Dent Aff., at ¶¶ 10–80). The accounts for these credit cards include: King Size credit card account ("KS Account"); Woman Within credit card account ("WW Account"); Blair credit card account ("Blair Account"); Jessica London credit card account ("JL Account"); Roamans credit card account ("Roamans Account"); Old Pueblo Traders credit card account ("OPT Account"); Haband credit card account ("Haband Account"); and Brylane Home credit card account ("BH Account"). Midland Funding purchased the Blair Account and Haband Account from Comenity Capital Bank, and the BH Account, JL Account, KS Account, OPT

> READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER IN THE FUTURE.
>
> 6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.[11]

The Midland Defendants contend that Ms. Tailor did not reject the provision for any of her accounts and it became binding once she opened, used, and made payments to her accounts after receipt of the agreements.[12]

The Midland Defendants likewise assert that Mr. Bowker incurred a financial obligation, via a credit card,[13] governed by an agreement containing the following arbitration provision:

---

Account, Roamans Account and WW Account from Comenity Bank. The Midland Defendants contend that Midland Funding acquired all rights, title, and interest of Comenity Bank and Comenity Capital Bank relating to Ms. Tailor's accounts; and Comenity Bank and Comenity Capital Bank transferred electronic business records to Midland Funding. Midland Credit serviced these accounts on behalf of Midland Funding. The Midland Defendants submit that a credit card agreement was mailed to Ms. Tailor for each of her eight accounts, and each continue to govern the respective account. (*See* D.E. 14-58, Defs.' Mot. to Compel Arbitration Br., at 12–13; D.E. 14-3 Mulcahy Aff., at ¶¶ 8, 10–11).

[11] (D.E. 14-58, Defs.' Mot. to Compel Arbitration Br., at 9–10 (quoting D.E. 14-24, Dent Aff., at Exs. A, F, J, N, R, V, Z, and DD)).

[12] (*Id.*, at 11, 19–20).

[13] (*Id.*, at 2–4, 11). Midland Funding purchased the account from Synchrony Bank, formerly known as GE Capital Retail Bank, formerly known as GE Money Bank. The Midland Defendants contend that Midland Funding acquired all rights, title, and interest of Synchrony Bank relating to the account; and Synchrony Bank transferred electronic business records to Midland Funding. Midland Credit serviced these accounts on behalf of Midland Funding. (*See* D.E. 14-3 Mulcahy Aff., at ¶¶ 5, 8–9; D.E. 14-16, Nayman Aff., at ¶ 2).

3

> PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.[14]

The Midland Defendants contend that Mr. Bowker did not reject the provision and it became binding once he used and made payments to his account after receipt of the agreement.[15]

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C.A. § 1 *et seq.*, Congress has "expressed a strong federal policy in favor of resolving disputes through arbitration."[16] Even in light of the FAA's policy, "[a]rbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."[17] Accordingly, "when determining whether there is a valid agreement to submit a dispute to arbitration" the Court inquires (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute falls within the scope of that agreement.[18]

When determining whether a valid arbitration agreement exists, a court "must initially decide whether the determination is made under [Federal Rule of Civil Procedure] 12(b)(6) or

---

[14] (D.E. 14-58, Defs.' Mot. to Compel Arbitration Br., at 8–9 (quoting D.E. 14-20, Nayman Aff., at Ex. D)).

[15] (*Id*., at 11, 19–20).

[16] *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009).

[17] *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

[18] *Certain Underwriters at Lloyd's*, 584 F.3d at 525.

4

56."[19] Motions to compel arbitration should be analyzed under a Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause . . . without discovery's delay.'"[20]

However, an analysis under Rule 12(b)(6) is improper "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue."[21] In such circumstances, "the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing."[22] After this limited discovery is completed, the court "may entertain a renewed motion to compel arbitration, this time judging the motion under a [Rule 56] summary judgment standard."[23]

### III.  DISCUSSION

The Tailor-Bowker Plaintiffs do not appear to dispute that account agreements exist as to their credit card accounts. Instead, they argue that the Midland Defendants failed to demonstrate that Midland Funding acquired rights to enforce arbitration and to establish with clarity that arbitration agreements exist between the parties.[24]

---

[19] *Sanford v. Bracewell & Guiliani, LLP*, 618 Fed. App'x. 114, 117 (3d Cir. 2015).

[20] *Guidotti v. Legal Helpers Debt Resolution LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

[21] *Id.*

[22] *Id.* (quoting *Somerset Consulting, LLC*, 832 F. Supp. 2d at 482).

[23] *Id*.

[24] (D.E. 17, Pls.' Opp'n, at 7–9).

The Midland Defendants rely on affidavits of employees from Synchrony Bank, Comenity LLC, and Midland Credit coupled with what appear to be sample credit card agreements and bills of sale to assert that the Tailor-Bowker Plaintiffs agreed to arbitration provisions that were transferred to the Midland Defendants. The Tailor-Bowker Plaintiffs assert that the Midland Defendants failed to submit copies of operative credit card agreements purportedly sent to the Tailor-Bowker Plaintiffs containing their names and purchase agreements transferring the accounts from the original creditors to the Midland Defendants. Thus, the Tailor-Bowker Plaintiffs contend that it is unknown whether and to what extent the purchase agreements between the original creditors and the Midland Defendants transferred arbitration rights to the Midland Defendants.[25]

The Court must first determine whether it should apply the Rule 12(b)(6) motion to dismiss or the Rule 56 summary judgment standard in deciding this motion, and thus, must consider whether "arbitrability [is] apparent on the face of the complaint."[26] The existence of Ms. Tailor's and Mr. Bowker's agreements, their arbitration provisions, and class-action waivers are not directly referenced in the Amended Complaint. The Amended Complaint does not attach the agreements as exhibits and does not base the FDCPA claims on the existence of agreements.

The Midland Defendants contend that this Court should consider the credit card agreements in connection with the instant motion because they assert that the Tailor-Bowker Plaintiffs rely on the credit card agreements in the Amended Complaint. The Midland Defendants argue sufficient reliance on the credit card agreements by referring to the Amended Complaint at paragraph 14 stating, "[t]he debts alleged to be owed by the Tailor-Bowker Plaintiffs and those similarly situated

---

[25] (*Id.*, at 8–12).

[26] *Guidotti*, 716 F.3d at 774.

were incurred for personal, family or household purposes," and paragraph 16, stating, "[t]he Accounts were past-due and in default when it was placed with or assigned to the Midland Defendants for collection."[27]

The Midland Defendants cite *Cintron v. Monterey Financial Services* to support their contention,[28] yet a deeper dive into the research reveals some disagreement in this District regarding language of the type at issue and whether it provides sufficient apparentness of arbitration on the face of a complaint. As explained by the Midland Defendants, the *Cintron* Court, in a footnote, explained that although the plaintiff failed to include the contract as an attachment to the complaint, "Plaintiff's complaint explicitly relies on the Contract. . . . ('Thereafter . . . the Debt was assigned or otherwise transferred to Defendant for collection.') . . . . As such, the Court will properly consider the Contract with Defendant's motion to compel arbitration."[29] The language relied on by the *Cintron* Court is similar to the language at issue here; however, this Court's inquiry cannot stop here.

Shortly after *Cintron*, Judge Wigenton explained in *Torres v. Rushmore Service Center, LLC*, that "the existence of the Card Agreement and its arbitration provision and class-action waiver is not referenced in the Complaint," and thus the question of arbitrability could not be resolved,[30] despite the complaint stating that "[t]he Debt was primarily for personal, family or household purposes," and "the Debt was assigned or otherwise transferred to Defendant for

---

[27] (D.E. 20, Defs.' Reply, at 3; D.E. 9, Am. Compl., at ¶¶ 14, 16).

[28] (D.E. 20, Defs.' Reply, at 2–3).

[29] *Cintron v. Monterey Fin. Servs., Inc.*, No. 2:17-11537, 2018 WL 4908283, at *1 n.1 (D.N.J. Oct. 10, 2018) (citation omitted).

[30] *Torres v. Rushmore Serv. Ctr., LLC*, No. 2:18-9236, 2018 WL 5669175, at *2–3 (D.N.J. Oct. 31, 2018).

7

collection."[31] Judge Wigenton noted a portion of this language from the complaint in her opinion.[32] Similarly, in *Nicasio v. Law Offices of Faloni & Associates, LLC*, the court denied defendants motion to compel arbitration due to the complaint failing to establish arbitrability on its face,[33] even though the complaint stated that plaintiffs' debts were primarily for "personal, family, or household purposes," and "[plaintiff's] alleged account was past-due and in default when it was placed with or assigned to [defendant] for collection."[34] The language in both of these complaints is nearly identical to the language here.

The Amended Complaint does not make clear on its face that the Tailor-Bowker Plaintiffs agreed to be bound by the arbitration agreements.[35] The issue of arbitration and arbitration provisions is raised for the first time in the Midland Defendants' instant motion. Because the Amended Complaint does not establish on its face that the parties agreed to arbitrate, the Court cannot decide the present motion without first ordering limited discovery as to the question of arbitrability, and it would be inappropriate to apply a Rule 12(b)(6) standard.[36]

---

[31] Complaint at ¶¶ 11, 13, *Torres., LLC*, No. 2:18-9236 (D.N.J. Oct. 31, 2018).

[32] *Torres, LLC*, 2018 WL 5669175, at *1 (stating "Plaintiff Daniel Torres ('Plaintiff'), a consumer, allegedly incurred a debt that was subsequently 'assigned or otherwise transferred to Defendant[,]' a debt collector. (Compl. ¶¶ 6, 9, 12–13, ECF No. 1.)").

[33] *Nicasio v. Law Offices of Faloni & Assocs., LLC*, No. 2:16-0474, 2016 WL 7105928, at *2 (D.N.J. Dec. 5, 2016).

[34] Amended Complaint at ¶¶ 42, 47, 50, 55, *Nicasio v. Law Offices of Faloni & Assocs., LLC*, No. 2:16-0474 (D.N.J. Dec. 5, 2016).

[35] (D.E. 9, Am. Compl.).

[36] *See, e.g.*, *Laudano v. Credit One Bank*, No. 15-7668, 2016 WL 3450817, at *5 (D.N.J. June 22, 2016) (denying a motion to compel arbitration and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate); *Nicasio v. Law Offices of Faloni & Assocs., LLC*, 2016 WL 7105928, at *2 (same); *Ross v. CACH, LLC*, No. 2:14-6321, 2015 WL 1499282, at *2 (D.N.J. Apr. 1, 2015) (same); *Torres v. Rushmore Serv. Ctr., LLC*, 2018 WL

The Court envisions limited discovery to clarify whether the Tailor-Bowker Plaintiffs agreed to arbitrate and whether the Midland Defendants were assigned the right of arbitration when Midland Funding purchased the accounts from either Synchrony Bank, Comenity Bank, or Comenity Capital Bank.

## IV. CONCLUSION

For the reasons discussed herein, the undersigned respectfully recommends that the Midland Defendants' motion to compel individualized arbitration and dismiss the action be **DENIED** without prejudice, and that the Court allow for limited discovery on the issue of arbitrability. At the conclusion of this limited discovery, the Court will entertain a renewed motion to compel arbitration. The parties have fourteen days to file and serve any objections to this Report and Recommendation.[37] The District Court need not consider frivolous, conclusive, or general objections.[38]



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

2/5/2019 11:54:32 AM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
    File

---

5669175, at *3 (same); *Golden Gate Nat. Seniorcare, LLC v. Lane*, No. 14-1957, 2015 WL 926432, at *6–7 (M.D. Pa. Mar. 4, 2015).

[37] 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

[38] *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

9